# United States Court of Appeals
# for the Fifth Circuit

_____

No. 22-10844
Summary Calendar

_____

United States Court of Appeals
Fifth Circuit

**FILED**
July 26, 2023

Lyle W. Cayce
Clerk

United States of America,

*Plaintiff—Appellee*,

*versus*

Benancio Castaneda,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 1:21-CR-31-1

_____

Before Jones, Haynes, and Oldham, *Circuit Judges*.

Per Curiam:[*]

Following a stipulated bench trial, Benancio Castaneda was convicted of conspiring to distribute and possess with intent to distribute 50 grams or more of methamphetamine (actual), and of possession with the intent to distribute 50 grams or more of methamphetamine (actual). The district court

_____

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

sentenced Castaneda to a total of 180 months in prison and a total of five years of supervised release.

Castaneda appeals the district court's denial of the motion to suppress the evidence found in the vehicle he was driving, arguing that the police officer did not have reasonable suspicion to extend the traffic stop to wait for a canine unit. We review the district court's factual findings with respect to a motion to suppress for clear error and its legal conclusions de novo. *United States v. Powell*, 732 F.3d 361, 369 (5th Cir. 2013). In a case where, as here, the district court's denial of the motion "is based on live oral testimony, the clearly erroneous standard is particularly strong because the judge had the opportunity to observe the demeanor of the witnesses." *United States v. Bass*, 996 F.3d 729, 736-37 (5th Cir. 2021) (internal quotation marks and citation omitted). Moreover, we view the evidence in the light most favorable to the prevailing party, here the Government, *see id.* at 737, and the district court's ruling on the suppression motion "should be upheld if there is any reasonable view of the evidence to support it," *United States v. Massi*, 761 F.3d 512, 520 (5th Cir. 2014) (internal quotation marks and citation omitted).

Where the police officer "develops reasonable suspicion of additional criminal activity during his investigation of the circumstances that originally caused the [traffic] stop, he may further detain [the vehicle's] occupants for a reasonable time while appropriately attempting to dispel this reasonable suspicion." *United States v. Smith*, 952 F.3d 642, 647 (5th Cir. 2020) (internal quotation marks and citation omitted). In this case, Deputy Dwight Montgomery initiated the traffic stop because the vehicle's license plate could not be read, as it was a temporary paper tag that was not secured properly and was "flapping." Deputy Montgomery knew that narcotics agents had been surveilling Castaneda after seeing him leave a house they had been monitoring. Moreover, during the traffic stop, Castaneda gave

inconsistent and untruthful stories about where he had been coming from.  In addition, Castaneda's driver's license was invalid, and his driver's license had been suspended due to his failure to complete a drug-education program. Castaneda also was "pretty visibly nervous, jittery," avoided eye contact, and "couldn't sit still."

Agent Marvin Patterson testified that, just prior to the traffic stop, he and another narcotics agent were conducting surveillance on a house where neighbors had complained about short-stay traffic consistent with drug trafficking.  Agent Patterson testified that he observed Castaneda enter that house carrying a lunchbox and leave with that lunchbox after less than 10 minutes, and that small containers like the lunchbox can be used to carry narcotics.   Agent Patterson's knowledge can be imputed to Deputy Montgomery because they were in communication with each other, and Agent Patterson participated in the traffic stop in coordination with Deputy Montgomery.  *See Powell*, 732 F.3d at 369.  Viewing the evidence in the aggregate and in the light most favorable to the Government, the district court did not err in concluding that the officers had developed reasonable suspicion of additional criminal activity that justified extending the stop to wait for the canine unit.  *See United States v. Reyes*, 963 F.3d 482, 487-90 (5th Cir. 2020); *see also United States v. Pack*, 612 F.3d 341, 361-62 (5th Cir. 2010), *modified on other grounds on denial of reh'g*, 622 F.3d 383 (5th Cir. 2010).

Castaneda also challenges the canine sniff itself, asserting that the canine handler prompted the dog to stick her nose through the vehicle's window, resulting in an unlawful search.  We need not decide whether the canine handler did prompt the dog in that manner, however, because the canine handler testified that, before the dog put her nose in the window, the dog had already alerted by the front driver's-side wheel when she climbed under the vehicle.  The district court found that the canine handler's testimony was credible, and this credibility determination is entitled to

deference. *See United States v. Gibbs*, 421 F.3d 352, 357 (5th Cir. 2005). Accordingly, based on that alert by the wheel, the officers had already obtained probable cause to search the vehicle. *See United States v. Williams*, 69 F.3d 27, 28 (5th Cir. 1995). The district court therefore did not err in denying Castaneda's motion to suppress.

Finally, Castaneda argues that the district court should have reduced his offense level because he accepted responsibility for his offense under U.S.S.G. § 3E1.1. In denying the reduction, the district court noted that Castaneda filed and signed a bench trial stipulation in September 2021, but then on the morning that the bench trial was scheduled to occur, Castaneda said that he wished to exercise his right to a jury trial and he denied having signed that stipulation. Consequently, the district court scheduled a jury trial for that November, but in the week before the jury trial, Castaneda announced that he no longer wanted a jury trial and that he would sign another stipulation; he then signed the stipulation (along with the motion for a bench trial) in the district court's presence so he could not claim again that he did not sign it. Based on this record, the district court's denial of a reduction for the acceptance of responsibility was not "without foundation." *United States v. Lord*, 915 F.3d 1009, 1020 (5th Cir. 2019); *see also United States v. Omigie*, 977 F.3d 397, 406 (5th Cir. 2020).

The judgment of the district court is AFFIRMED.